# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| HIGHER ONE, INC., | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 3:09-cv-00337 (AWT) |
| v. | ) | |
| | ) | |
| TOUCHNET INFORMATION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | NOVEMBER 8, 2010 |
| Defendant. | ) | |
| | ) | |

## DEFENDANT TOUCHNET INFORMATION SYSTEM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

Patrick J. Whalen
Kyle L. Elliot
SPENCER FANE BRITT & BROWNE LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 (facsimile)
pwhalen@spencerfane.com

Elizabeth A. Alquist (ct15643)
Nicholas A. Pisarsky (ct27916)
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103-1212
Tel: (860) 275-0100
Fax: (860) 275-0343
eaalquist@daypitney.com
nipisarsky@daypitney.com

I. Edward Marquette
KUTAK ROCK LLP
1010 Grand Blvd., Suite 500
Kansas City, MO 64106
(816) 960-0090
(816) 960-0041 (facsimile)
Ed.Marquette@KutakRock.com
*Attorneys for Defendant*
*TouchNet Information Systems, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................3

        A.      Summary Judgment Standard ...................................................................3

        B.      Written Description Requirement Under 35 U.S.C. § 112, ¶ 1 ..............5

        C.      Person of Ordinary Skill in the Art .........................................................7

        D.      Higher One's Post Hoc Claim Amendments Rendered the Asserted Claims
                of the '536 Patent Invalid and Thus Not Capable of Being Infringed ...................9

        E.      Neither The Proposed Construction Nor The Limitation At Issue Has
                Support In The '536 Patent Specification ...............................................12

                1.      The '536 Patent Specification Does Not Describe "Goods Or Services"..14

                2.      The Specification Is Silent on Order of Operations ....................................14

                        a.      The specification is silent as to when deduction of the cost of
                                goods or services must occur relative to determining the refund
                                amount ..........................................................................................15

                        b.      The specification is silent as to when the exchange of goods or
                                services must occur relative to the arrangement of the refund
                                delivery .........................................................................................16

                3.      Patentees' Failure to Amend Consistently During Prosecution Evidences
                        That Patentees Never Possessed Any Invention Incorporating the Post Hoc
                        Amendment of the Asserted Claims .........................................................16

        F.      Embodiments In The Specification Operate Without Regard To And Even
                Against Both The Proposed Construction And The Limitation At Issue .............18

                1.      Embodiments in the '536 Specification Permit Goods or Services to be
                        Exchanged Either Prior to or After Arranging the Refund Amount ..........20

                2.      Embodiments in the '536 Specification Necessarily Operate Against the
                        Limitation At Issue ...................................................................................22

                3.      The Specification Discloses an Embodiment In Which the Patentees
                        Contemplated That Determination the of Refund Amount Would Occur
                        After Deducting Costs of Goods And Services. .........................................24

        G.      The Proposed Construction Fails The Written Description Requirement
                Because Higher One Does Not Cite To Any Part Of The Patent's Written
                Description For Support .........................................................................25

                1.      The Examiner's Statements Are Silent On Written Description Support..25

                2.      Written Description Support Cannot be Inferred From Examiner's Silence26

                3.      Higher One's Citation to the Notice of Allowability is Self-Referential and
                        Circular .....................................................................................................27

III.    CONCLUSION ....................................................................................................28

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................. 3

Ariad Pharmaceuticals Inc. v. Eli Lilly & Co., 598 F.3d 1336 (Fed. Cir. 2010) ........................... 5

Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774 (Fed. Cir. 1983)....................... 8, 9

Hyatt v. Boone, 146 F.3d 1348 (Fed. Cir. 1998) ....................................................... 6, 11

In re Wilder, 736 F.2d 1516 (Fed. Cir. 1984) .............................................................. 6

Lockwood v. Am. Airlines, Inc., 107 F.3d 1565 (Fed. Cir. 1997) ................................... 6

New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290 (Fed. Cir. 2002).................. 11

Perricone v. Medicis Pharmaceutical Corp., 539 F.Supp.2d 571 (D.Conn. 2008) ..................... 3

PowerOasis Inc. v. T-Mobile USA Inc., 522 F.3d 1299 (Fed. Cir. 2008) ............................. 4

Prima Tek II, L.L.C. v. Polypap, 318 F.3d 1143 (Fed. Cir. 2003) ..................................... 26

Purdue Pharma, L.P. v. Faulding, Inc., 230 F.3d 1320 (Fed. Cir. 2000) .... 6, 14, 18, 19, 22, 23, 24

Purdue Pharma., L.P. v. F.H. Faulding & Co., 48 F.Supp.2d 420 (D. Del. 1999) aff'd, 230
F.3d 1320 (Fed. Cir. 2000)...................................................................... 5, 26

Shemitz v. Deere & Co., Inc., 623 F.2d 1180 (7th Cir. 1980)......................................... 8

Turbocare Division Of Demag Delaval Turbomachinery Corp. v. General Electric Co.,
264 F.3d 1111 (Fed. Cir. 2001)............................................................................... 4

University of Rochester v. G.D. Searle & Co., Inc., 358 F.3d 916 (Fed. Cir. 2004)............. 4, 8, 9

Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555 (Fed.Cir.1991)...................................... 6, 7

## Statutes

35 U.S.C. § 103(a) ........................................................................................ 26

35 U.S.C. § 112 ¶ 1 ......................................................... 1, 2, 5, 6, 11, 12, 26

35 U.S.C. § 119(e) .......................................................................................... 9, 10

35 U.S.C. § 119(e)(1)...................................................................................... 6, 11

35 U.S.C. § 120................................................................................................ 10

WA 2547103.1

# I.    INTRODUCTION

Defendant TouchNet Information Systems, Inc., ("TouchNet") submits this memorandum of law in support of its motion for summary judgment that the asserted claims of U.S. Patent No. 7,496,536 ("the '536 Patent") are invalid for failure to meet the written description requirement of 35 U.S.C. § 112 ¶ 1.[1]  Both of the independent claims of the '536 Patent – claims 1 and 24 – recite the limitation: "without goods or services being exchanged prior to arranging for the refund amount to be delivered" (the "Limitation At Issue").  See '563 Patent, claims 1, 24.[2] These claims are invalid for failure to satisfy the written description requirement of § 112 ¶ 1, because it is evident from the face of the specification that the patentees did not invent, and thus, did not possess at the time of filing the original application, methods or apparatuses having the Limitation At Issue.[3]

This action arises from Higher One's infringement allegations, asserting one or more claims of the '536 Patent.  The '536 Patent claims priority to U.S. Provisional Patent Application Serial No. 60/350,255, filed on January 17, 2002.  During prosecution of the patent application in 2008, the patent examiner rejected the claims as being unpatentable over prior art.  Almost seven years after the original filing date, on October 8, 2008, the applicants responded to and overcame the examiner's prior art rejection by adding the Limitation At Issue to the only two independent

---

[1] HigherOne alleges in its complaint that TouchNet has infringed certain claims of the '536 Patent.  See Complaint at ¶ 6, attached as Exhibit A to the accompanying Rule 56(a)1 Statement of Facts.

[2] The '536 Patent is attached as Exhibit B to the accompanying Rule 56(a)1 Statement of Facts.

[3] This memorandum is limited to the failure of the '536 patent to meet the written description requirement by both the Limitation At Issue and Higher One's proposed construction thereof.  TouchNet reserves all rights to additional arguments of invalidity, including that the asserted claims: (1) lack written description support for other claim limitations; and (2) are invalid on other grounds.

claims of the application, claims 1 and 24.  The applicants selected this Limitation At Issue, not based on anything from their application, but from the prior art cited by the examiner.  Not surprisingly, the patentees never possessed anything described by the literal language of the Limitation At Issue.

Higher One's proposed construction of the Limitation At Issue is also beyond the scope of anything the patentees had invented or possessed at the time of filing.  Higher One argues that this Court must construe the Limitation At Issue as: "the refund amount is determined before the cost of any goods or services purchased by the student is deducted" ("the Proposed Construction").  See Joint Statement Identifying Agreed Upon Claim Construction and Proposed Constructions for Disputed Terms (the "Joint Statement"), Dkt. Entry # 60 at 4–6.[4]  The Proposed Construction also renders asserted claims 1 and 24 invalid for failure to satisfy the written description requirement of § 112, ¶ 1, because – for the same reason that the Limitation at Issue renders the claims invalid – the patentees, at the time of filing the original application did not possess anything that incorporated the Proposed Construction.

This Court may properly rule on this motion prior to the claim construction decision, because, for this motion, there is no genuine issue regarding construction, as the analysis herein is limited to the literal language of the two phrases, the Limitation At Issue and the Proposed Construction.  Furthermore, because there is no dispute between the parties regarding the construction of the Limitation At Issue the validity of this limitation is ripe for summary judgment ruling.

---

[4]   The Joint Statement is attached as Exhibit I to the accompanying Rule 56(a)1 Statement of Facts.

WA 2547103.1

The dispositive question raised by this motion is whether the '536 Patent's prosecution history contains an adequate, written description of the Limitation At Issue or the Proposed Construction so as to demonstrate that the patentees, at the time of the filing, were actually in possession of anything incorporating either phrase.  The prosecution history does not.  Because every other claim of the '536 Patent depends from claims 1 and 24 – and therefore, all require the Limitation At Issue which the patentees never invented – every claim of the '536 patent is also invalid.  Higher One's assertion, that the patentees invented something which they never possessed at the time of filing, is exactly the type of overreaching that the written description requirement guards against.  This Court should, therefore, grant summary judgment, and hold that the claims of the '536 Patent are invalid for failure to meet the written description requirement of § 112, ¶ 1 because there is no genuine issue that the '536 Patent's prosecution history indisputably indicate that, at the time of filing, they did not invent, and never possessed, anything incorporating the Limitation At Issue or the Proposed Construction.

## II.    ARGUMENT

### A.    *Summary Judgment Standard*

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Perricone v. Medicis Pharmaceutical Corp., 539 F.Supp.2d 571, 578 (D. Conn. 2008) (quoting Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992)) (internal quotations omitted).  A fact is material if it "might affect the outcome of the suit."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "Compliance with the written description requirement is a question of fact but is amenable to

summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party."  PowerOasis Inc. v. T-Mobile USA Inc., 522 F.3d 1299, 1303 (Fed. Cir. 2008).

In patent cases, the patent's specification alone is sufficient evidence, without more, to invalidate the patent for failure to meet the written description requirement if the specification does so clearly and convincingly.  See University of Rochester v. G.D. Searle & Co., Inc., 358 F.3d 916, 930 (Fed. Cir. 2004) (holding that the "patent in suit proves its own invalidity" under the written description requirement because "[t]he patent's claims all require a COX-2-selective compound, but no COX-2-selective compound is disclosed in the patent, and it is undisputed that there was no pre-existing awareness in the art of any compound having COX-2-selective activity").  Thus, based solely on the language of the patent specification, a court may find a patent invalid for failure to meet the written description requirement in a summary judgment ruling.  University of Rochester, 358 F.3d at 927.  See also Turbocare Division Of Demag Delaval Turbomachinery Corp. v. General Electric Co., 264 F.3d 1111, 1119 (Fed. Cir. 2001) (holding that a summary judgment, finding a claim invalid, is proper where the "original disclosure is completely lacking in any description of an embodiment [of the disputed limitation]").

Here, the asserted claims are invalid as a matter of law, because the '536 Patent, by itself, is indisputable evidence that the patentees did not invent or ever possess anything that incorporated either the Proposed Construction or the literal language of the Limitation At Issue. Based solely on the specification of the '536 Patent, this Court may now properly find the asserted claims invalid prior to the claim construction decision, because the parties do not dispute Higher One's Proposed Construction for the Limitation At Issue, and the analysis herein is limited to the literal language of the two phrases.  An inspection of the specification limited to

WA 2547103.1

Higher One's Proposed Construction and the literal language of the Limitation At Issue demonstrates that the literal language of both phrases completely lacks any support in the specification.[5]

### B.      Written Description Requirement Under 35 U.S.C. § 112, ¶ 1

To be valid, every patent claim must meet a written description requirement under § 112, ¶ 1, separate from the enablement requirement under that same provision.  See Ariad Pharmaceuticals Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1340 (Fed. Cir. 2010).  The statutory language requires that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it … ."  35 U.S.C. § 112, ¶ 1.  "The 'written description' requirement serves a teaching function, as a 'quid pro quo' in which the public is given 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.'"  University of Rochester, 358 F.3d at 922 (citations omitted).  The written description requirement serves to guards against a patentee adding "post hoc claims that were not part of the original invention."  Purdue Pharma., L.P. v. F.H. Faulding & Co., 48 F. Supp. 2d 420, 427 (D. Del. 1999), aff'd, 230 F.3d 1320 (Fed. Cir. 2000).   "The written description requirement prevents applicants from using the amendment process to update their disclosures (claims or specifications) during their pendency before the patent office" so as to date those amendments back to the original filing date.  Chiron Corp. v. Genetech, Inc., 363 F.3d 1247, 1255 (Fed. Cir. 2004), cert. denied, 543 U.S. 1050 (2005).

---

[5] TouchNet maintains the position, and reserves the argument for a later motion, that both the Limitation At Issue and Higher One's proposed construction are not amenable to any reasonable construction and are, therefore, invalid as indefinite.  For the purposes of the present motion only, however, TouchNet posits that both are can be construed.

Section 112 requires that the originally-filed disclosure have a written description sufficient to support every claim, original and amended, in such a way as to indicate the applicant had possession of the claimed invention.  In re Wilder, 736 F.2d 1516, 1521 (Fed. Cir. 1984).  Such a written description must be found in the disclosure with the earliest date to which the patent claims priority.  Hyatt v. Boone, 146 F.3d 1348, 1353 (Fed. Cir. 1998).  In order for a non-provisional patent application to claim priority to a provisional patent application, the latter must comply with, *inter alia*, the written description requirement.  See 35 U.S.C. § 119(e)(1). ("Disclosure" herein may refer to the originally-filed specifications of either the provisional or the non-provisional applications.)

To satisfy the written description requirement, an applicant must convey "with reasonable clarity to those skilled in the art that, as of the filing date sought, [the applicant] was in possession of the [claimed] invention."  Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563–64 (Fed.Cir.1991).  Merely disclosing that which makes the claim obvious does not satisfy the written description requirement for that claim.  Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997).  "All the limitations must appear in the specification."  Id.  Amendments to claims added by an applicant after the original filing date must find support in the original description.  TurboCare, 264 F.3d at 1118.  Significantly, the written description requirement for a limitation is not satisfied where the patentees picked "a characteristic that is not discussed even in passing in the disclosure, and then [made] it the basis of claims" that incorporate that characteristic as the limitation.  Purdue Pharma, L.P. v. Faulding, Inc., 230 F.3d 1320, 1327 (Fed. Cir. 2000).

### C.      Person of Ordinary Skill in the Art

To determine whether the written description requirement is satisfied, courts consider the point of view of a hypothetical person of ordinary skill in the art of the patent. Vas-Cath, 935 F.2d at 1563–64. For the '536 Patent, the applicable person of ordinary skill in the art must meet several criteria. First the person must have general knowledge of e-commerce systems, specifically payment systems, creation, maintenance, exchange, display, and application of data by electronic means via the Internet and other forms of electronic data exchange. Affidavit of Mr. Bill Kitchen, ¶ 5.[6] The person must be skilled in applying those systems to the support of commercial and retail use for exchange of information, service enrollment, service use, purchase of goods and services, and supporting customer service and reporting. Id. at ¶ 6. The person must understand the processes, practices, and regulations involved in the disbursing of student funds by an educational institution. Id. at ¶ 7. The person must be capable of discerning the advantages described by the '536 Patent specification. Id. The person must have knowledge regarding the handling of student funds and is necessarily intricately familiar with the practices, procedures, and legal compliance with statutes and regulations of an educational institution. Id. The person must be capable of understanding and using a computer system designed and programmed to facilitate the processes and practices involved in disbursing student funds by an educational institution. Id. at ¶ 8. The person needs not be able to program, but needs to be able to use the programmed interface. Id.

Whatever the level of ordinary skill in the art may be, the Court may find that the asserted claims fail the written description requirement, because the '536 Patent specification alone is

---

[6] The Affidavit of Bill Kitchen is attached as Exhibit G to the accompanying Rule 56(a)1 Statement of Facts.

sufficient evidence to resolve the written description issue.  The level of skill in the art is not a genuine issue of fact when the case involves easily understandable subject matter requiring no expert testimony.  The University of Rochester court held that a patent's specification alone was sufficient evidence, without more, to invalidate the patent for failure to meet the written description requirement if the specification did so clearly and convincingly.  See University of Rochester, 358 F.3d at 930.  "After all, it is in the patent specification where the written description requirement must be met."  Id. at 927.  If "the structure and mode of operation of the invention described and claimed in the patent may be readily comprehended by the court without need for technical explanation by expert witnesses," a summary judgment finding a patent invalid for being obvious is appropriate.  Shemitz v. Deere & Co., Inc., 623 F.2d 1180, 1184 (7th Cir. 1980).  The level of skill in the art is not a genuine issue of fact when the case involves easily understandable subject matter requiring no expert testimony.  Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 779 (Fed. Cir. 1983).

For the instant motion, no expert testimony about any complex language is necessary to find a lack of written description, and no prior art needs to be examined.  Here, the Court is not being asked to determine the meaning of any prior art, or to determine how a skilled artisan might understand prior art in comparison to the patent in suit.  In granting summary judgments of invalidity due to prior art, both the Shemitz and the Chore-Time Equip. courts found that the level of skill in the art was not a genuine issue because the cases involved easily, understandable subject matter.  Because the Court here needs only to find that the literal language of the Limitation At Issue and Higher One's undisputed Proposed Construction lacks written description support, the level of skill in the art is even less an issue of fact than in Shemitz and Chore-Time Equip., where the courts had to determine whether claims are obvious over prior art.

WA 2547103.1

The Court here needs to construe no language to find a lack of written description, because the analysis herein is based solely on the literal language of both the Limitation At Issue and Higher One's own Proposed Construction.  Instead, the Court can simply read the patent to see that the *literal language* of a claim element and its proposed construction are not disclosed by the patent specification.  See <u>University of Rochester</u>, 358 F.3d at 930.  The '536 Patent specification itself is clear and convincing that nothing therein provides written description support for the literal language of either phrase.  There is, therefore, no genuine issue of fact concerning the level of skill required in the art, because, for purposes of finding a lack of written description support of the Limitation At Issue and the Proposed Construction, the literal language of both phrases is readily comprehended by the Court.  See <u>Chore-Time Equip.</u>, 713 F.2d at 779.  The plain language of the two phrases viewed in light of the specification is sufficient for the Court to invalidate the asserted claims.  See <u>University of Rochester</u>, 358 F.3d at 930.

> **D.**   ***Higher One's Post Hoc Claim Amendments Rendered the Asserted Claims of the '536 Patent Invalid and Thus Not Capable of Being Infringed***

The asserted claims of the '536 Patent are invalid because the patentees disclosed nothing in the application to indicate that they had possession, at the time of filing the application, any invention incorporating either the Proposed Construction or the Limitation At Issue.  The '536 Patent was granted after prosecution of U.S. Non-provisional Patent Application Serial No. 10/799,387 ("the '387 application").  See '536 Patent.[7]  In turn, the '387 application claims the benefit under 35 U.S.C. § 119(e) to the U.S. Provisional Patent Application Serial No. 60/458,671 ("the '671 application"), filed on March 28, 2003.  See "Declaration and Power of

---

[7] The '536 Patent is attached as Exhibit B to the accompanying Rule 56(a)1 Statement of Facts.

Attorney for Patent Application" for the '387 application, at 2.[8]  The '387 application also claims benefit under 35 U.S.C. § 120 to U.S. Non-provisional Patent Application Serial No. 10/345,605 ("the '605 application").  (Id. at 2.)  The '605 application, in turn, claims benefit under 35 U.S.C. § 119(e) to the U.S. Provisional Patent Application Serial No. 60/350,255 ("the '255 application"), filed on January 17, 2002.  See "Declaration and Power of Attorney For Patent Application" for the '605 application, at 2.[9]

The '536 Patent discloses a facilitating party that manages the delivery of student financial aid refunds for an educational institution such that the institution no longer manages the delivery of such refunds directly to a student.  '536 Patent at Abstract, Figs. 2–5; '671 application, Fig. 1.  The facilitating party does this by receiving from the educational institution a file containing student information and a refund amount associated with the student.  See '671 application, at 1–2, 6; '536 Patent at 3:23–27, Figs. 3–5.  The educational institution wires the money from its bank to a facilitating bank.  See '671 application at Fig. 1[10]; '536 Patent at Figs. 2–5.  The facilitating party can be either the facilitating bank or Higher One or both.  See '671 application at Fig. 1; '536 Patent at Figs. 2–5.  The facilitating party collects a student's preferred method of delivery, and arranges for delivery according to the preferred method.  '671 application at 6; '536 Patent at Abstract, Figs. 5–6, 10–11.  The invention purports to arrange the funds in the facilitating bank in such a way as to comply with banking regulations and Department of Education rules.  '536 Patent at Figs. 4–5, 4:20–28, 4:42–45, 4:64–5:1, 5:13–27.

---

[8] The "Declaration and Power of Attorney for Patent Application" for the '387 application is attached as Exhibit C to the accompanying Rule 56(a)1 Statement of Facts.

[9] The "Declaration and Power of Attorney For Patent Application" for the '605 application is attached as Exhibit E to the accompanying Rule 56(a)1 Statement of Facts.

[10] A portion of the '671 application is attached as Exhibit D to the accompanying Rule 56(a)1 Statement of Facts.

A provisional patent application to which a non-provisional patent application claims priority must comply with, *inter alia*, the written description requirement. 35 U.S.C. § 119(e)(1). Thus, in order for the asserted claims to be valid, both the Limitation At Issue and the Proposed Construction must have written description support in the '671 and the '255 applications. The applicant must provide a written description in the specification that "unambiguously describe[s] all limitations." Hyatt, 146 F.3d at 1354. Such a written description must be found in the disclosure with the earliest date to which the patent claims priority. Id. at 1353. Because the '536 Patent claims priority to the provisional patent applications, the '671 application and the '255 applications, the written description support must be found in those applications, as they are the disclosures with the earliest date to which the '536 Patent claims.[11] "The specification of the provisional must 'contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' 35 U.S.C. § 112 ¶ 1, to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application." New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294 (Fed. Cir. 2002).

The prosecution history of the '536 Patent readily provides an explanation for the reason that the Limitation At Issue in the asserted claims and the Proposed Construction are completely absent from both the '671 application and the '536 Patent specification. The prosecution history reveals that, in response to the patent Examiner's prior art rejection, the inventors amended the asserted claims with the Limitation At Issue years after the original filing, and declared that the Limitation At Issue was the distinguishing characteristic over prior art. See Applicants' October

---

[11]     The subject matter of the '536 Patent is allegedly based in whole on the '671 application, and in part on the '255 application. Neither the Limitation At Issue nor the Proposed Construction is disclosed by the applications.

WA 2547103.1

8, 2008 Response to Examiner's August 5, 2008 Office Action for the '387 application, at 7–8.[12] The specification, however, is completely silent on, and does not mention even in passing, either the Proposed Construction or the Limitation At Issue.  The specification fails to even suggest that the patentees ever understood the invention to incorporate the elements described by either phrase, or that the patentees ever considered either phrase to be an important aspect of the invention.  Yet, years after the original filing, in response to Examiner's finding that the invention was not patentable, the applicants declared to the Examiner that the Limitation At Issue is the one thing that caused the invention to become patentable.  See id.  Such an amendment is exactly the type of *post hoc* claim amendments against which the written description requirement serves to guard.  The lack of written description support for both phrases is so apparent even to Higher One that Higher One chose not to rely on anything in the specification as the basis for its Proposed Construction.[13]  Accordingly, this Court should hold that the asserted claims of the '536 Patent are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112 ¶ 1 and cannot, therefore, be infringed by TouchNet.

> **E.    Neither The Proposed Construction Nor The Limitation At Issue Has Support In The '536 Patent Specification**

Although Higher One has pointed to nothing in the '536 Patent's specification as support for its Proposed Construction or the Limitation At Issue, an inspection of the specification readily reveals that Higher One would be unable to do so anyway because nothing therein provides support for either phrase.  The analysis in this Section shows that neither Higher One's

---

[12] The '387 Application, Applicant's October 8, 2008 amendment is attached as Exhibit F to the accompanying Rule 56(a)1 Statement of Facts.

[13] This is likely the reason that Higher One points not to the patentees' own words in the specification or the prosecution history, but instead, to the patent examiner's statements as the basis for the Proposed Construction.  See Joint Claim Construction Statement at 5–6, attached as Exhibit I to the accompanying Rule 56(a)1 Statement of Facts.

WA 2547103.1

Proposed Construction nor the Limitation At Issue was mentioned even in passing in the specification and that nothing in the specification remotely suggests that the applicants considered either the Proposed Construction or the Limitation At Issue to be part of their invention at the time of filing.[14]

The language of the Limitation At Issue appeared, for the first time, in any document related to the '536 Patent's prosecution history, when the patentees responded to the Examiner's cited prior art, almost seven years after the filing of the original application.  Nothing in either the specification of the '536 Patent, or the provisional applications to which it claims priority, provides any written description support for the Proposed Construction or for the Limitation At Issue.  Nothing in those disclosures can be understood to unambiguously describe either phrase, or to indicate that the patentees had possession of an invention incorporating either phrase at the time of the original filing.  Affidavit of Mr. Kitchen, ¶¶ 10–12.  This lack of written description support can be explained by an inspection of the prosecution history of this *post hoc* amendment to the claims.  The patentees, in order to overcome the Examiner's prior art objection, amended claims 1 and 24 with the Limitation At Issue, by arbitrarily selecting from the cited prior art a characteristic, not discussed whatsoever in either the '536 Patent specification or the provisional applications, to incorporate into the claims.  See Applicants' October 8, 2008 Response for the '387 application, at 7–8.  From this prosecution history, it is inescapable that, at the time of the asserted filing date, the applicants did not invent, did not possess, and were not even considering the asserted claims' Limitation At Issue.  The Court should, therefore, rule that the asserted claims are invalid for lack of written description support.

---

[14]  The discussion herein does not depend on the results of claim construction because the analysis focuses on whether the literal language of the Limitation At Issue finds support in the specification, and not on the meaning of the limitation.

The discussion below reveals that the key terms and phrases used in the Limitation At Issue and the Proposed Construction are nowhere to be found in the specification or the provisional applications.

### 1.      The '536 Patent Specification Does Not Describe "Goods Or Services"

The asserted claims are invalid because the phrase "goods or services," present in both the Proposed Construction and the Limitation At Issue, finds no written description support in the specification.  While the originally filed disclosure need not provide *in haec verba* support for literal language of the claims, a skilled artisan, "reading the original disclosure, must immediately discern the limitation at issue in order for the disclosure to satisfy the written description requirement."   Purdue, 230 F.3d at 1323.   Here, anyone reading the original disclosure of the '536 Patent immediately discerns, *inter alia*,  that neither the Limitation At Issue nor the Proposed Construction were mentioned, even in passing, in the specification or the provisional applications.   For example, the word "goods" was used only twice in the specification, both times only in the claims, and zero times in the specification.  The '536 Patent, claims 1 and 24.  The singular and plural forms of the word "service" were used eight times, twice in the limitation, and six times in the specification.  The '536 Patent, claims 1 and 24, and 8:54–56, 9:5–7, 7:24–28, 9:23–27, 9:60–64.  However, none of the six instances of "service" was used in the same context as that of the Proposed Construction or of the Limitation At Issue.

### 2.      The Specification Is Silent on Order of Operations

The asserted claims are invalid, because the specification fails to provide the written description support for the order of operations required by both the Proposed Construction and the Limitation At Issue.  In particular, nothing in the specification indicates that the patentees, at the time of the original filing, was in possession of any invention requiring either 1) that the refund amount must be determined before deducting the cost of goods or services purchased (for

the Proposed Construction), or 2) that the arrangement for refund delivery must occur before the exchange of goods or services (for the Limitation At Issue).

For the Limitation At Issue, the word "prior" was used, outside of the claims, only once in the specification in a context unrelated to the order or exchanging goods or services and arranging refund deliveries.  The '536 Patent, claims 1 and 24, and 2:44–49.  The Proposed Construction's "before" was used twice in the specification, neither instance at all related to the timing between the determining a refund amount and the deducting of costs.  The '536 Patent, 1:38 – 43 and 3:29 – 32.  Finally the word "after" was used once in the entire specification and in a context unrelated to either the Limitation At Issue or the Proposed Construction.  The '536 Patent, 10:48 – 49.

> a.  **The specification is silent as to when deduction of the cost of goods or services must occur relative to determining the refund amount**

The Proposed Construction renders the asserted claims invalid because the specification provides no written description support for the order in which the deduction of the cost of goods or services must occur relative to the determination of the refund amount, as required by the Proposed Construction.  Nothing in the specification of the '536 Patent indicates that the patentees ever considered to be important the order of the two operations, deduction and determining.  The specification never actually mentions anything, even in passing, that requires the order of operations required by Higher One's Proposed Construction.  Nothing in the '536 Patent specification corresponds to the literal language of the Proposed Construction.

Moreover, not a single instance of the various forms of "determine" in the '536 Patent is used in the context of the Proposed Construction (i.e., determining a refund amount before deducting costs of any goods or services).  "Calculating a refund amount," as a potential synonym for "determining a refund amount," fares no better.  The three instances of various

forms of "calculate" involve something other than a refund amount.  Variations of "compute" in the specification also involve something other than a refund amount.

Likewise, no forms of "deduct" or variations of its potential synonyms, "subtract," "minus," "take away," "take off," or "withdraw," are used in the '536 Patent specification in the context of the Proposed Construction.  The fact that the Proposed Construction's straightforward terminology (and potential synonyms) is not used whatsoever in the '536 Patent specification in the same context leads to the inevitable conclusion that the specification fails to describe the Proposed Construction.  Thus, because the specification of the '536 Patent fails to indicate that the patentees was in possession, at the time of the original filing, of the order of operations required by Higher One's Proposed Construction, the asserted claims of the patent are invalid for failure to meet the written description requirement.

> **b.** **The specification is silent as to when the exchange of goods or services must occur relative to the arrangement of the refund delivery**

As with the Proposed Construction, the Limitation At Issue renders the asserted claims invalid because the specification provides no written description support for the order of operations required by the Limitation At Issue.  The literal language of the Limitation At Issue requires that the exchange of goods or services occur prior to the arranging for refund delivery.  An inspection of the specification of the '536 patent shows that the word "exchange" was used three times, twice in the claims, and once in the specification not in the context of the Limitation At Issue.  See '536 Patent, 10:34–38.

> **3.** **Patentees' Failure to Amend Consistently During Prosecution Evidences That Patentees Never Possessed Any Invention Incorporating the Post Hoc Amendment of the Asserted Claims**

At the time of filing, the applicants were not in possession of either the Proposed Construction or the Limitation At Issue, because, when they amended the asserted claims by

WA 2547103.1

adding the Limitation At Issue nearly seven years after filing the original application, the patentees failed to make a corresponding amendment to the specification.  Prior to the patentees' *post hoc* amendment, Claim 1's three instructions were essentially identical and parallel to the three steps depicted in Fig. 6.[15]  The patentees first introduced the Limitation At Issue, almost seven years after the original filing, in their response to Examiner's prior art rejection.  See Applicants' October 8, 2008 Response to Examiner's August 5, 2008 Office Action for the '387 application, pages 7–8.  The patentees' eleventh-hour amendment gave rise to an inconsistency between Claim 1 and Figure 6, because the patentees, in responding to the Examiner's rejection, failed to amend Figure 6 as they did Claim 1.  The inconsistency arose only after the patentees made the *post hoc* amendments and leads to the inevitable conclusion as a matter of law that, at the time of filing, the patentees never considered at all whether the deduction of costs of (or exchanging) goods or services needed to occur either before, during, or after the determination of the refund amount (or arranging for refund delivery).  At the time of filing, the order of those operations was plainly not part of the purported invention, and was indisputably not important to the patentees.  The specification indisputably corroborates this conclusion, as it expressly teaches that the method steps of Figure 6 may be practiced in any practicable order, not just in the order disclosed in Figure 6.  See '536 Patent at 5:56–60.  Both the specification and the prosecution history fail to indicate that the patentees ever considered that the order of operations in the two phrases was part of the invention.  Thus, because the patentees cannot be said to have been in

---

[15]   The three steps of Claim 1 are "receiving an indication ...," "determining a method," and "automatically arranging."  Prior to the *post hoc* amendment, the claims did not incorporate the Limitation At Issue.  This analysis is also applicable to Claim 24.  See '536 Patent at Claims 1 and 24, Fig. 6.

WA 2547103.1

possession of either the Proposed Construction or the Limitation At Issue at the time of filing, the asserted claims are invalid for failure to meet the written description requirement.

The Court must act to guard against the *post hoc* amendments described in the foregoing, and to prevent the patentees of the '536 Patent from claiming later that which they had not invented at the time of filing by ruling that the asserted claims are invalid for lack of written description support.

F.    **Embodiments In The Specification Operate Without Regard To And Even Against Both The Proposed Construction And The Limitation At Issue**

The foregoing analysis regarding the Proposed Construction and the Limitation At Issue shows that not only was neither phrase disclosed by the specification, but also that the patentees at the time of filing never considered either phrase as being part of the invention.  The analysis in this Section shows that the specification discloses embodiments that: (1) plainly disregard the order of operations required by both the Proposed Construction and the Limitation; and (2) operate only against the order of operations required by both phrases.

Although a specification need not set forth what the invention is and what the invention is not in order to satisfy the written description requirement, where nothing in the specification indicates to the skilled artisan which examples embody the claimed invention and which do not, a court is compelled to consider all examples in a specification collectively.  Purdue, 230 F.3d at 1328.  In Purdue, the patentees added to the original claims for a drug formulation with the amended limitation requiring that a particular concentration be greater than two (C > 2).  The several examples set forth in the patent included those having the C > 2 requirement, and those that had a concentration of less than two.  Id. at 1325.  The patentees argued that the two examples in the specification that included the amended limitation were sufficient for written description support of the amended limitation, in spite of other examples that did not adhere to

the amended limitation.  Id. at 1327.  The Federal Circuit, disagreed, and found that nothing "in the specification in any way emphasizes" the limitation, and that nothing in the two examples that included the limitation would suggest that the limitation was an "important defining quality" of the invention.  Id. at 1326.  The specification's examples failed to "indicate[] to the skilled artisan which examples embody the claimed invention and which do not."  Id.  "What the … patentees have done is to pick a characteristic possessed by two of their [embodiments], a characteristic that is not discussed even in passing in the disclosure, and then make it the basis of claims that cover not just those two [embodiments], but any [embodiment] that has that characteristic. This is exactly the type of overreaching the written description requirement was designed to guard against."  Id. at 1327.

The Purdue patentees further argue that they claimed less than they disclosed, and that, because they did not consider those embodiments with concentrations less than two to be patentable over prior art, their "willingness to settle for claims narrower than the invention … disclosed does not create a written description problem."  Id. at 1328.  The Federal Circuit found this argument unavailing, and found that the embodiments, viewed collectively, of the specification failed to indicate that the limitation was part of the invention.  Id. at 1326.

As in Purdue, the embodiments of the specification of the '536 Patent fail to indicate that the Limitation At Issue or the Proposed Construction was part of the invention, and seem to even indicate that both limitations were ***not*** part of the invention.  Some of the embodiments disclosed in the specification of the '536 patent may support the limitation, but other embodiments either render the limitation unnecessary or outright operate in contravention to the limitation. However, the specification is devoid of any suggestion that the Limitation At Issue or the Proposed Construction was an important defining quality.  Nothing "in the specification in any

way emphasizes" either phrase.  Because nothing in specification of the '536 Patent indicates "which examples embody the claimed invention and which do not," all the examples must be deemed to embody the claimed invention.  The examples in the specification of the '536 Patent that operate in the claimed order of the limitation must be considered together with the other examples that do not support, and even outright contradict, the limitation.  Considered collectively, the disclosed examples fail to provide support for the Limitation At Issue and the Proposed Construction.

The lack of written description support is highlighted by the prosecution history of the '536 Patent – the patentees declared to the Examiner that, having amended their claims with one of the three distinguishing characteristics that they selected from the prior art, the amended claims were patentable over the prior art.  However, no different from the patentees in Purdue, the characteristic that the patentees selected, the Limitation At Issue, fails the written description support requirement.  It was merely to gain the allowability of the claims over prior art.  Accordingly, this Court should find that the asserted claims are invalid because neither the literal language of the Limitation At Issue nor Higher One's undisputed Proposed Construction thereof satisfies the written description requirement.

      1.      **Embodiments in the '536 Specification Permit Goods or Services to be Exchanged Either Prior to or After Arranging the Refund Amount**

The asserted claims of the '536 Patent fail to satisfy the written description requirement, because the specification discloses embodiments that disregard the order of operations required by the asserted claims' Limitation At Issue, in that those embodiments permit the arrangement of funds transfer to occur either before or after the exchange of goods and services.[16]  Such

---

[16]  The Limitation At Issue requires that the arrangement of the refund delivery occurs prior to any exchange of goods or services.

embodiments render the asserted claims invalid for failure to satisfy the written description requirement, because nothing in the specification indicates that those embodiments are not part of the invention.

The order of operations required by the Limitation At Issue is disregarded by two disclosed embodiments. The specification details a student database **800**, which includes a student refund transfer preference **810**. See '536 Patent at Fig. 8. This student database may be **_updated_** based on information provided by the student. See id. On point are the specification's examples of a student who may receive a refund after dropping a class, and an educational institution's employee receiving a paycheck. See '536 Patent at 2:39-42 and 12:35-37. For both embodiments, the specification contemplated that the student or the employee may need to arrange the funds transfer again if his refund transfer preference has changed for the refund or paycheck. Hence, the arranging can occur **_after_** the services have already been exchanged (the dropped class for the student, and the employee's labor). Higher One's real-life practice of the patent bears this out.[17] Thus, these embodiments show that not only had the patentees never considered the Limitation At Issue to be a characteristic of the invention, Higher One's real life practice of the patent permits the funds to be arranged before or after exchange of goods and services.

---

[17] See Higher One's production document numbers H00000029, H00000030, H00000095, H00000096, H00000139, H00000148, and H00000149. See also University of Houston's production document number UH000029, attached as Exhibit H to the accompanying Rule 56(a)1 Statement of Facts.

### 2.   Embodiments in the '536 Specification Necessarily Operate Against the Limitation At Issue

The asserted claims of the '536 Patent are invalid for lacking written description support, because the specification contemplates embodiments that necessarily can only operate against the Limitation At Issue.  These embodiments must be considered collectively with those embodiments that do not operate against the Limitation At Issue, because the specification does not indicate which embodiments are directed to the invention and which are not.  See Purdue, 230 F.3d at 1326.  It is hard, if not impossible, to see how the specification can be said to provide written description support of a claim limitation when the specification itself shows that the patentees contemplated embodiments that can only operate against the limitation.

First, the specification discloses an embodiment that requires students to receive a physical card prior to activating an account, where only after the card has been activated can the student arrange for a funds transfer.  See '536 Patent at 10:45-47.  The receipt of a physical card by the student represents an exchange of goods as Higher One construes the term.[18]  It is indisputable that this embodiment requires the exchange of goods (the card) *prior to* arranging for a funds transfer.  In other words, in direct contradiction to the literal language of the Limitation At Issue, this embodiment requires that the arranging of funds transfer occur only *after* the exchange of goods.

Second, other embodiments disclosed by the '536 Patent's specification operate only against the Limitation At Issue.  Specifically, two disclosed embodiments require that goods or services be exchanged prior to the arranging of funds transfer, in direct contradiction to the literal language of the Limitation At Issue.  The specification discloses an embodiment involving

---

[18]   Higher One has proposed a plain and ordinary meaning construction of "goods and services."  See Joint Claim Construction Statement at 6.

reimbursing a professor for teaching-related travel expenses and another embodiment involving paying employees.  See '536 Patent at 12:27-37.  These two embodiments are contrary to the language of Limitation At Issue, because they contemplate that goods or services must be exchanged prior to arranging for transfer of an amount.  The professor has performed the travel-related services and purchased travel-related goods (exchanged goods or services) prior to arranging for the reimbursement, and the employee has performed labor (exchanged services) prior to arranging for the paycheck.  Nothing in the specification indicates that these embodiments are not the invention, so the court must view them together with the other embodiments.  See Purdue, 230 F.3d at 1328.  These two embodiments that are contrary to the patentees' *post hoc* amendment must be considered to be embodiments of the invention.  Viewed collectively, it is difficult to evade the conclusion that the patentees never considered the Limitation At Issue as part of the invention at the time of the original filing.

Finally, these embodiments were in the specification at the time of filing, and are now "contrary," because the patentees added a *post hoc* claim amendment years after the original filing.  The conflict between these embodiments and the Limitation At Issue reveals the applicants' true understanding of their invention as of the original filing – that they did not consider important at all the characteristic that they first introduced in an amended limitation to overcome Examiner's obviousness objection.  In view of the foregoing, the Court should, under the written description requirement, find that the *post hoc* amendment renders the asserted claims invalid.

### 3. The Specification Discloses an Embodiment In Which the Patentees Contemplated That Determination the of Refund Amount Would Occur <u>After</u> Deducting Costs of Goods And Services.

The Proposed Construction also finds no written description support in the '536 Patent specification, because the specification discloses an embodiment in which determining the refund amount can occur only <u>after</u> deducting the costs of goods and services. Such an embodiment functions against the order of operations required by the Proposed Construction.[19] As the Federal Circuit has stated, this embodiment must be considered together with other embodiments, because the specification does not indicate which embodiments are directed to the invention and which are not. See <u>Purdue</u>, 230 F.3d at 1326.

Specifically, the specification describes an embodiment where a student may receive a refund after either dropping a class or providing an overpayment. See '536 Patent at 2:39-42; 12:35-37. In this embodiment, the amount to be refunded to the student, whether due to dropping a class or overpaying, must necessarily be determined <u>after</u> the costs of what the student has already purchased has been deducted, in direct contravention of the Proposed Construction, which requires that the refund amount be determined <u>before</u> deducting the cost of any services purchased by the student. It is hard, if not impossible, to see how a specification that discloses an embodiment that only operates against the Proposed Construction can be said to provide written support for the construction. Higher One's Proposed Construction is a misguided attempt to make sense of patentees' *post hoc* amendment with the Limitation At Issue, a characteristic that the patentees never possessed at the time of filing the patent application. Viewing the various embodiments together, it is difficult to escape the conclusion that the

---

[19] The Proposed Construction mandates determining a refund amount before deducting the costs of goods and services purchased.

patentees never considered the Proposed Construction as part of the invention at the time of the original filing. In view of the foregoing, the Court should hold that the asserted claims are invalid for failure to meet the written description requirement.

### G. The Proposed Construction Fails The Written Description Requirement Because Higher One Does Not Cite To Any Part Of The Patent's Written Description For Support

In support of the Proposed Construction, Higher One points to nothing in the written description, and instead cites only to the patent Examiner's statements in the Notice of Allowability.[20] Higher One does not cite to the written description not because of a lack of opportunity, but because that is impossible to do so – nothing in the written description supports the Proposed Construction. Instead, Higher One was forced to cite the patent Examiner's statements in the Notice of Allowability as the sole support, and not the applicants' / patentees' own words in the patent specification, for the Proposed Construction. TouchNet urges the Court to find that, where the Examiner does not weigh in on the written description support of a limitation, citing solely to the Examiner's Notice of Allowability for written description support fails to meet the written description requirement for the limitation.

#### 1. The Examiner's Statements Are Silent On Written Description Support

Even assuming that an Examiner's Notice of Allowability, which is created years after filing, can provide written description support, nothing in the portion of the Notice cited by Higher One provides written description support for the Proposed Construction. The cited

---

[20] In the Joint Claim Construction Statement, Higher One cited, as support for its construction of the limitation at issue, the Notice of Allowability for U.S. Patent Application Serial No. 10/799,387, dated Jan. 2, 2009 at 2–3, attached as Exhibit J to the accompanying Rule 56(a)1 Statement of Facts. See Joint Claim Construction Statement at 5–6.

portion begins with the Examiner describing the prior art in order to lay the foundation for her ultimate opinion.  See Notice of Allowability for the '387 application, at 2–3.  The Examiner then concluded that the prior art does not render obvious the "authorization [of] a refund without goods or services being exchanged prior to arranging for the refund amount to be delivered."  Id. at 3.  An opinion of non-obviousness says nothing about whether any limitation has written description support.[21]  The Examiner was merely opining that the claims are not obvious and are thus patentable over the prior art then before the Examiner.  See id.  Nothing in the Examiner's statements addresses whatsoever the issue of whether that limitation has any support in the disclosure.  Thus, because Higher One's citation of Examiner's statements fails to provide the written description support of the Proposed Construction, TouchNet asks the court to find the asserted claims invalid.

### 2.     Written Description Support Cannot be Inferred From Examiner's Silence

No written description support can be inferred from the Examiner's silence, and to infer written description support from Examiner's silence on the issue is inappropriate.  Basing a claim's meaning on inferences drawn from the Examiner's silence is improper.  Prima Tek II, L.L.C. v. Polypap, 318 F.3d 1143, 1151 (Fed. Cir. 2003).  "[W]hether the patent specification adequately describes a patent for purposes of Section 112 must be determined by the text and examples of the specification and their meaning to those skilled in the art, and not by the Patent Examiner's failure to act."  Purdue, 48 F. Supp. 2d at 432. Thus, to find written description support of the Proposed Construction based on Higher One's citation to the Examiner's statements would require the Court to infer written description support from the Examiner's

---

[21]   A valid claim must meet the separate requirements of, *inter alia*, non-obviousness under 35 U.S.C. § 103(a), and written description support under 35 U.S.C. § 112, ¶ 1.

WA 2547103.1

unequivocal silence on the issue.  This Court should accept a document (Notice of Allowability) created years after the filing of the patent for support that plainly is not there.

> **3.      Higher One's Citation to the Notice of Allowability is Self-Referential and Circular**

Higher One's citation of the Notice of Allowability further fails to provide written description support for its Proposed Construction because the citation is self-referential and circular.   A closer look at the portion of the Notice cited by Higher One reveals that the Examiner was repeating nearly verbatim the original language of the Limitation At Issue.[22]  Higher One, therefore, is really offering nothing more than the original language of the Limitation At Issue as support for its Proposed Construction of the Limitation At Issue.   Put another way, Higher One is insisting that the written description support for the Proposed Construction of the Limitation At Issue is the Limitation At Issue itself.   This is self-referential and circular reasoning, and fails to establish any written description support for the Proposed Construction.

---

[22] The Examiner concluded that the prior art does not render obvious the "authorization [of] a refund without goods or services being exchanged prior to arranging for the refund amount to be delivered."  <u>See</u> Notice of Allowability at 3.

### III.    CONCLUSION

For the foregoing reasons, this Court should grant TouchNet's Motion for Summary Judgment of Invalidity.

Respectfully submitted,

By:    /s/ Kyle L. Elliot
   Patrick J. Whalen
   Kyle L. Elliot
   SPENCER FANE BRITT & BROWNE LLP
   1000 Walnut Street, Suite 1400
   Kansas City, MO 64106
   (816) 474-8100
   (816) 474-3216 (facsimile)
   pwhalen@spencerfane.com

   DAY PITNEY LLP
   Elizabeth A. Alquist
   Nicholas A. Pisarsky
   242 Trumbull Street
   Hartford, CT 06103
   Hartford, CT  06103-1212
   Tel: (860) 275-0100
   Fax: (860) 275-0343
   eaalquist@daypitney.com
   nipisarsky@daypitney.com

   KUTAK ROCK LLP
   I. Edward Marquette
   1010 Grand Blvd., Suite 500
   Kansas City, MO 64106
   (816) 960-0090
   (816) 960-0041 (facsimile)
   Ed.Marquette@KutakRock.com

   ***Attorneys for Defendant***
   ***TouchNet Information Systems, Inc.***

## <u>CERTIFICATE OF ELECTRONIC FILING</u>

I hereby certify that on November 8, 2010, a copy of the Memorandum in Support of TouchNet's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Nicholas A. Pisarsky

WA 2547103.1